*GREEN, J.,
dissented. He said, no other question like that presented in this case, would ever, in all probability, occur hereafter; and differing with tiis brethren, but with great diffidence, he should, therefore, not discuss at large, the questions which had been so elaborately argued at the bar, but state the result of his examination of them as succinctly as possible.
The deeds of lease and release with warranty, made by Prudence, the ancestor of the appellees, in 1769, divested her of the estate tail, and of all right present or future: she had no longer jus in re nor jus ad rem : she was, thereafter, incapable of receiving an effectual release of the reversion, and under no circumstances could she be remitted to the estate tail. Her estate being a fee tail general, and necessarily to descend with the warranty to the issue in tail, that warranty operated as an immediate discontinuance, converting the estate tail into a mere right, and putting that in abeyance, necessarily to remain, upon her death, to the issue in tail if any, and if none to those in reversion, notas an estate to be reduced to possession by entry, but a right to be asserted by a writ of formedon only, unless that right was barred, 'in her lifetime and before it vested, by some lawful means. That might be done in England, in such a case, by a common recovery with double voucher, both as to the issue and those in reversion and remainder; and, as to the issue, by a fine only; neither of which passed any new or additional interest from the tenant in tail, but only operated as estoppels, corroborating the first conv'eyannce incidentally, by barring the right of the issue &c. as the case might be, even although the recoveree in the recovery, or cognizee in the fine were utter strangers to the first conveyance. But in Virginia, those rights could not be barred by either of those methods, that being expressly prohibited by statute, and there were no means of barring them but by special act of assembly.
That is said to have been the effect of our statutes of 1776 and 1785 converting estates tail into fee simple, or of-*the statute of 1792 repealing the statute de donis with all other english statutes.
The statute of 1776, in terms, applies only to estates tail in possession, or in reversion or remainder after an estate for life or a lesser estate. And neither Prudence, nor Vandever, or indeed any other person, had any such estate in possession, remainder, or reversion, at the passing of the statute, or at any time since. The saving of the rights of all persons other than the issue in tail and those in reversion or remainder, is an exception in favour of the rights of strangers, in the cases embraced in the enacting clause, leaving it to operate in the cases provided for, as to the issue and "those in reversion or remainder, as if there were-no saving whatever, or as if the enacting clause had been concluded by a declaration, that in all such cases the issue in tail and those in reversion and remainder should be absolutely barred of all right. The present case certainly does not come within the literal terms of that statute.
The act of 1785 is in more general terms. It provides, “That every estate which on 7th October 1776, was an estate tail, shall be deemed from that time to have been, and thenceforward to continue, an estate in fee simple: and every estate, which since hath been limited, so that, as the law aforetime was, such an estate would have been an estate tail, shall also be deemed to have been and to continue an estate in fee simple: And all estates which before 7th October 1776, by the law, if it remained unaltered, would have been estates in fee tail, and which now by virtue of this act, are and will be estates in fee simple, shall from that time [Oct. 1776] and henceforth be discharged of the conditions annexed thereto by the common law, restraining alienations before the donee shall have issue; so that the donees, or persons in whom the conditional fees vested, or shall vest, had and shall have the same power over the said estates as if they were pure and -absolute fees.” In strictness, the right in question was not an estate tail in October 1776, the estate having been divested and turned to a mere right by the Conveyance of 1769. And the absolute power over such estates (as over a pure and absolute fee) is declared to have been, or thereafter to be, in him in whom the estate was vested in October 1776, or in him in whom it had since been or might thereafter be vested. The right in question was not vested in Prudence, in October 1776, or at *319 any time thereafter; and if such a right ■was converted by the statute into a right of fee simple, it remained in this new character, as in its former, a right vested in no one during the life of Prudence, and vested upon her death in her children, converted into a fee simple. But 1 do not think, that either statute, in its terms, affected any estate or right not vested in some one, nor until it was vested; and then and then only operated upon the vested estate, and converted it into a fee simple. If it had been intended to affect rig'hts in abeyance, the language of the statutes would not have left that doubtful.
Nor do I think that the case comes within the equity of the statutes. The purpose of the legislature was to suppress an extensive public mischief, the perpetuation of property in particular families by entails; a practice greatly encouraged by our previous legislation. This object was completely effected, by giving an unlimited power of alienation, prospectively, to those then or thereafter possessed or entitled to entailed property, without ratifying their acts already done, which when done were unlawful, and which could not be rendered valid, by any act in their power without the aid of a legislative act. These cases were, moreover, very rare; and in those which existed, the fee simple right and power of alienation would be suspended only during a life in being; within the period universally allowed for executory limitations in favour of family settlements. And general laws are usually considered as providing for those cases which most frequently occur.
It was objected, that if the appellees are entitled, they are entitled as fee simple owners; and, therefore, cannot maintain a writ of formedon. My brother Cabell has shewn that a writ of formedon in descender as well as in reverter * would lie at common law for the recovery of a fee simple estate, whenever a writ of right would not lie. And here, if the appel-lees were entitled in fee simple, they could not maintain a writ of right, as they could not allege a seizin in demense as of fee, either in themselves, or their ancestor from whom they claim by descent as heirs. They can claim only per formam doni. So that, whether the right cast upon them was a right in fee tail, or fee simple, it could only be asserted in a writ of formedon.
The statute of 1792, abrogating the english statutes, expressly saves all rights arising under any such statute at any time before the commencement of the act, in the same condition in all respects as if the act had never been made. The saving is not confined to vested rights, but extends to all of every possible description; and, consequently, to the right in this case then existing and in abeyance.
As to the question, whether the heir of Prudence at the common law, or her heirs under our statute of descents, would be entitled, if either; the settled doctrinéis, that the estate tail goes to the heir of the body who would inherit the land entailed, if his ancestor held the same land in fee: as, if gavelkind land is entailed, it goes to all the sons; if borough-english, to the youngest; and if the tenure of the land so entailed, is changed to the common law tenure, it goes, afterwards, to the heir at the common law, the eldest son. So here, whoever by our general law of descents, would be entitled to inherit the land, if the ancestor held in fee, are entitled to claim as heirs in tail per formam doni, if the heirs in tail have any right.
Upon the whole, if left to my own judgment, I should be of opinion to affirm the judgment of the circuit court, but with considerable doubt, much increased by the strong opinions of my brethren to the contrary.
Judgment reversed, and judgment entered for the tenant.